Greetings and welcome to a short interview review of the President's visit to the United States, USA. Good morning.  May it please the Court, Manuel Dionis on behalf of the Petitioner Joseph Fugall, Law Offices of Manuel Dionis. In the case that we have before you today... Would you mind speaking up a little bit because Judge Graber is going to have to be able to hear you. Yes, Your Honor. And I'd like to reserve three minutes for rebuttal, Your Honor. Okay, I'll try to help you. With regards to the main issue, and I believe it's the only issue that we have before you today, is whether the conviction that the Petitioner was convicted of in 707-721 for unlawful imprisonment was a crime involving moral turpitude. And the arguments that we presented in our brief is that 707-721 specifically lacks the As you well know, it either involves fraudulent conduct or conduct that is considered by the BIA vile, base, depraved, and in this instance, it's normally, and I believe Tijuana Beholders says that it's normally an intent to harm. And that specifically in 707-721, it lacks uniformity with regards to the specific intent. Yes, there is... Our decision in Liao couldn't have come out the way it did if that had been the law. The law is not that there needs to be an intent to harm. That's certainly a helpful component from the government standpoint, but that's not the sort of the floor. Yes, Your Honor, and we understand. And even looking beyond that, if we take a look at the 707-721, even with that being the floor, if we take a look at it, is there's nothing else to indicate with regards to 707-721 that, and that's why we've provided examples of where you could be convicted of 707-721, and it's not a conduct that is considered vile or base as according to the BIA. But you would, as I understand the statute, to be convicted, you would have to knowingly put somebody at, I can't remember the exact phrase, but you know... Restraint. No, no, the risk of harm, the risk of very serious bodily harm to them, you'd have to knowingly do that. Whatever your conduct that was restraining them consisted of, you would have to know that in doing that, you were putting them at risk of serious bodily injury. Yes, Your Honor, and one of the things that I wanted to compare was if we take a look at knowingly as it's defined under 702-206, which is, Your Honor, if I just have some time, with regards to the language of 702-206 versus the language of 707-721 where knowingly requires restraining and understanding the conduct and the outcome for it. If we take a look at 707-721, it just merely says circumstances that expose the person to the risk of serious bodily harm. So if you take a look at those 702-206 and 707-721, it just doesn't match, Your Honor. And what I'm specifically saying is that 702-206 is very specific about the conduct and the outcome, that there is this knowing portion about what you're going to do and what's going to happen. However, if you take a look at the second element of 707-721, it's absent from there. It's just saying that the person is exposing and there's not a real risk that the harm will be an outcome of that situation, Your Honor. Have you, in your, you haven't argued in its brief that you haven't challenged the VIA's meaning that you didn't identify any instance of 707-721 being applied on a non-CIMT basis. Is that correct? Yes, Your Honor. If we take a look at the petitioner's own situation, and I understand that it was not facts that had come out from the trial, and I was not the trial attorney for this. However, it was not facts that had come out either at the immigration court level or the immigration court level. I can also probably advise the petitioner to not give in to facts in case that there's a Rule 40 to set aside the conviction. However, in the petitioner's case, where he's restraining the wife from, after an argument and restraining the wife from leaving the home and she's in a state where she might possibly harm herself, this is a specific situation where it does. It's the petitioner's own case. Other than this case, based on your construction of it, is there any other instance where the VIA has applied the statute in the way that you claim it does? With specifically Hawaii revised statutes? No, Your Honor. Not that I know of. And that's really what we're construing here, is this particular statute? Yes, Your Honor. Okay. So basically, this is, you're asking us to make new law, right? I'm asking this court to specifically take a look at this specific situation where it  Under the law. Yes, Your Honor. There is, and as I do say in my brief, Your Honor, that there is not this realistic probability of the application of... There is this realistic probability of the application of this non-terpituitous conduct and having conviction and the outcome and it leading to removal for the petitioner. I understand that the government submitted some supplemental citations that I'd like to address, Your Honor, also. With regards to Ortega-Lopez, which is a VIA case that came after we'd submitted the petition for review, this doesn't change anything with regards to the petitioner's case. What the VIA in Ortega-Lopez was holding was that the conduct described in the statute in question, if not involving fraud, must still either inherently be base, vile, depraved, or morally reprehensible. So here in a conviction for 707-721, it's still the same, Your Honor. What we're taking a look at is what makes it vile or base was whether the petitioner had the intent to, one, knowingly restrain the person, and the second element, the intent to harm, and that's still absent here. If 707-721 specifically had that specific language of intent, then that's what would have made it vile, base, or depraved. And one of the... Doesn't at least one application of the statute involve serious bodily injury, which is defined as a substantial risk of death? Yes, Your Honor. And I believe that's still absent. There's still the specific element that the petitioner needs to have had that intent to cause that substantial bodily injury. But that's only with regards to the knowingly restraining that other party, Your Honor. I guess what I'm struggling with, for the audience here, we're trying to find out whether a Hawaii statute qualifies as a crime involving moral turpitude, and we match that up with some of the immigration and other laws to determine whether someone's going to be treated in a particular way. I understand. And he's trying to say that the statute doesn't comply, and therefore get a different treatment. It's like a jigsaw puzzle. We have hundreds of these involving different statutes, and he's convincing us, he hopes, that this is one of those statutes. If we take a look, and one of the examples I gave was an unlawful imprisonment is the – if we take a look at kidnapping, for example, Your Honor, and that's one of the examples that I gave. And unlawful imprisonment is a lower offense for kidnapping. And if you take a look at kidnapping, Your Honor, the specific definition is 707-720, a person commits the offense of kidnapping if the person intentionally or knowingly restrains another person and going to the second element with intent to do that second element. And this is clear, this is a CIMT crime. And however, the state legislature specifically with regards to unlawful imprisonment did not include that intent with regards to the second element of causing this – of exposing the person to risk of serious bodily injury. I understand that there's a higher level with regards to the type of injury that may be caused, but it still doesn't explain why there's this absence of that conforming intent with regards to the whole element of the statute, with regards to element one, restraining, second, the harm that it's actually caused. I'd like to reserve the rest of my time. Very well. Thank you. Good morning. May it please the Court. You've got a little echo here. Sorry. May it please the Court. My name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. As I understand Petitioner's argument, he's claiming that knowingly only modifies the word restrain in the first degree unlawful imprisonment Hawaii statute. The government has pointed out in its brief, if you look at the jury instructions in Hawaii, it specifically says there are three material elements. And the material elements are, one, restraint, two, under circumstances which expose the risk of serious bodily injury, and the last is the defendant did so knowingly. And the jury instructions are listed in the conjunctive, which means each and every single one of those elements have to be proven beyond a reasonable doubt in order for a defendant to be convicted under the statute. So in this case, I don't believe that the comparison to the kidnapping statute does anything to benefit Petitioner's case here because the Hawaii kidnapping statute has two different mens reis for each of the elements. So it makes sense to sit there and say knowingly and intentional with the first element and intentional with the second element. But in this case, the drafters of the Hawaii statute for first degree unlawful imprisonment reasonably determined that knowingly, since it modifies all of the elements, would be enough to just mention it in the beginning, and the jury instructions recognize that. And we also cited the state versus flores in the supplemental citations, which were the court in discussing the differences between kidnapping and first degree unlawful imprisonment recognized that kidnapping has a higher mens rea of intent to terrorize, whereas unlawful imprisonment requires only knowing exposure to the risk of substantial bodily harm. Counsel, should we be analyzing this statute on a categorical basis or a modified categorical basis? I believe it's a categorical analysis, Your Honor. In this case, the Board of Immigration Appeals appropriately concluded that the statute was categorically a crime involving moral turpitude. So let's assume that your understanding of the way the mens rea carries over to the attendant's circumstance. Let's say that that's right. Nonetheless, this does seem to still be kind of an extension of where our case law is now as far as the reach of what constitutes a crime involving moral turpitude. So maybe you can address, on the assumption that the person has to knowingly expose the victim to a risk of serious bodily injury, why does it still, why does it constitute in the question, are you referring to the attenuation of the risk rather than immediate or imminent? I'm just saying, let's assume we disagree with your opponent on how to read the Hawaii statute. So we agree with your reading, so the person has to knowingly restrain the victim and has to know that in doing so, they're going to expose the victim to a risk of serious bodily injury. On that assumption, it's still not obvious to me that this crime constitutes a crime involving moral turpitude. I wanted to hear your explanation. Well, and the second step to that, to the analysis for a crime involving moral turpitude, Your Honor, is that the petitioner has to not only, the petitioner has the burden of proving that there is a realistic probability that the statute would be, that offenses that fall that are broader than the statute would be offenses that would be prosecuted under the statute. And he hasn't proven that. He hasn't met that burden as well. I think you're not understanding my question. I apologize. I'm saying, let's say that we agree with your reading of the Hawaii statute, right? And so there are, so we know what the elements of the offense are. Right. Knowingly restraining the person and the defendant knows that in doing so, they're going to expose the person to a serious, a risk of serious bodily injury. That is still, we would need to extend what we said in Leal, it seems to me, to say that this crime is covered. And I'm not sure why we should take that step, given that Leal was already a pretty serious extension of what falls within the scope of the CIMT. I don't think it would be, I disagree, Your Honor, with the characterization that it would be an extension of Leal. I agree with the board that this is consistent with Leal and the rationale that the court had in that case, because in Leal, which was dealing with Arizona's reckless endangerment statute, and the court said that even though the mens rea, the culpable mens rea, was reckless rather than higher mens rea of knowing compared to this case, the serious, the risk of harm was sufficiently serious that it amounted to, that it satisfied the requirement of depravity. Right. But that's my point. The risk of harm there was arguably far greater than it is here, because we were just dealing with the felony version, so it was just, I think, you probably know the phrasing better than I do, but it was like a serious risk of imminent death or something like that. Right, right. I mean, it was, in terms of the scale of, you know, from least egregious harm to most, it was all the way on this extreme. Serious bodily injury, the definition is, it's pretty scary. I mean, it's not some trivial kind of injury we're talking about, but it's not a substantial risk of imminent death. That just strikes me as orders of magnitude, you know, further on the end of extreme harm. So we're not there. Yes, we do have a slightly higher mens rea than in Leal. I think I'm just going to stop talking and let you talk. Okay. So, yes, but I think what the, even though the mens rea, I think the mens rea is actually the linchpin, because it is a higher mens rea in our case, even though the resulting harm is slightly more attenuated, because it's only a risk of exposure to substantial, to the risk of substantial, of serious bodily harm, pardon me. Knowingly exposing someone to that risk of serious bodily harm or permanent disfigurement or an organ failing, that is, knowing that and yet choosing to do it, that's what the board was saying, is what amounts to something that has moral turpitude, sufficient depravity to amount to a crime involving moral turpitude. So even though the result may be slightly more attenuated than in Leal, which had the imminent serious death result, it's counterbalanced by the higher mens rea. It's not just reckless. It's not just willful neglect. It's knowing. And it's the fact that the defendant knows he is restraining this person's liberty through threat, menace, violence, and knowing that by doing so he is putting that person in circumstances that expose that person, the victim, to the risk, a substantial risk of serious bodily injury. And as you said, the definition of serious bodily injury is not by any means minimal. So I think the board in this case appropriately applied the court's decision in Leal to conclude that the circumstances in this case, even though the mens rea and the balancing of the mens rea against the expected harm goes the opposite way. A lower mens rea in Leal, a higher mens rea in this case, and a higher risk of imminent death in Leal, whereas in here it's a little more attenuated because it's exposure to the risk of. I think that the balancing is consistent with Leal. And so it would not be an extension of the court's jurisprudence, Your Honor. And if I understand Petitioner correctly, to the extent that he is saying the realistic probability test has been met, the government disagrees. First of all, there is nothing in the record to support his characterization of what happened in his case. It was his burden to show the Board of Immigration Appeals and the immigration judge that in his case the prosecution was not one that involved moral turpitude and therefore there is a realistic probability that the state of Hawaii would prosecute crimes that fall outside of that realm. He didn't do that in this case. Even though the attorney offered to do it, he never did. And so the record in this case is devoid of any facts regarding the conviction. So we ask the court to disregard any extra record information regarding Mr. Fagat's conviction because the statute in immigration cases cabins the court's review to the record as it existed before the agency. And besides that, Petitioner has conceded today to the court that there is no other Hawaii case that he can point to that would satisfy the realistic probability test that would allow him to meet that burden. Unless the court has any further questions. I don't think so. We ask that the petition be denied. Thank you. Sorry, a little timeout. You don't have to use it all, but you got it. Just briefly, Your Honor. Thank you. And in response to the application of leal beholder in the Ensign case, yes, it is something that I do believe that we are asking that this court to consider an extension of what it means for leal beholder and how it applies to specifically, in this case, 707-721, and what is missing in regards to that element of that statute. I can't stress that enough, Your Honor. And if I haven't hammered this enough, and I couldn't remember if I did state this, Your Honor. In Petitioner's case, 707-721, as opposed to leal beholder, which did, yes, have the one thing that leal beholder did have was that it specifically said that there was some type of mens rea applied throughout the Arizona statute, which was applied throughout the whole statute, whereas in this case, 707-721 allows for conviction if the person is just merely exposed to the risk of that harm. So do you have a Hawaii case in which somebody had their conviction upheld under the statute where they knowingly restrained the person, but they weren't aware that by doing that they were going to expose them to a risk of serious bodily injury? No, Your Honor. The analogy that I probably give that maybe goes off the top of my head is maybe a theft crime that was recently described by this court in the past year with regards to how the definitions of, with regards to intent and how the definitions of intent for general theft crimes apply to, and in those situations where someone could possibly be convicted. Your Honor, you know what, let me withdraw that. Let me make sure I got your answer. So you don't have a Hawaii case in which somebody was allowed to be convicted under the statute where they didn't know that they were going to expose someone to a risk of serious bodily injury? Because that is what the statute seems to require. We have Hawaii Supreme Court cases that say unless the legislature makes clear otherwise, we assume that the mens rea specified carries over to each of the elements of the offense. So that would support the government's reading of the statute here. That's why I'm just asking, do you have something that cuts against that? Because if you don't, then it seems to me we have to go with the government's reading of the statute. No, I don't, Your Honor, and I can only point to this specific case and obviously for specific reasons why the trial attorney would not have admitted to any facts with regards to what they'd like to do in terms of legal strategy for the case itself. Yeah, I understand. Any other? No, thank you, Your Honor. All right, thank you both, counsel, for your argument. The case is argued and submitted.
judges: Graber, M. Smith, Watford